**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| Ez-XBRL Solutions, Inc. | )  Civil Action No. _____ |
| | ) |
| Plaintiffs, | )  COMPLAINT FOR INJUNCTIVE RELIEF |
| | ) |
| v. | ) |
| | ) |
| Nitin D. Chapke; DNC Data Systems Private | ) |
| Ltd., | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiff Ez-XBRL Solutions, Inc. ("Ez-XBRL Solutions" or "Plaintiff"), by and through its undersigned counsel, respectfully files this Complaint against Defendants Nitin D. Chapke ("Chapke") and DNC Data Systems Private Ltd. ("DNC").

## INTRODUCTION

1.      This is an action seeking damages and injunctive relief for copyright infringement, breach of fiduciary duty, breach of contract, tortious interference with prospective and existing contracts, conversion, and unjust enrichment.

2.      Plaintiff seeks relief for the infringement, by both Defendants, of Plaintiff's copyrights. Plaintiff also seeks relief for Defendant Mr. Chapke's breach of his fiduciary duties arising from his position as director of and agent for Plaintiff corporation. Plaintiff further seeks relief for Defendant DNC's breach of its contractual noncompetition obligations under the Assignment of Rights Agreement ("Agreement"), a true and correct copy of which is attached hereto as Exhibit A, and under which Plaintiff acquired certain copyrights and other intellectual property at issue here. In addition, Plaintiff seeks relief for Defendant Mr. Chapke's intentional interference with the contractual relationship between Plaintiff and co-

defendant DNC, for tortious interference by both Defendants with Plaintiff's prospective contracts with potential customers, and for conversion by both Defendants of embodiments of Plaintiff's intellectual property. Finally, Plaintiff seeks restitution of the unjust enrichment that Defendants have received by infringing on Plaintiff's copyrights, improperly diverting business away from Plaintiff for Defendants' benefit, and otherwise violating their respective duties and obligations.

3.      Plaintiff further seeks an order enjoining Defendants from continuing their misconduct.

## PARTIES

4.      Plaintiff Ez-XBRL Solutions is a Virginia corporation with its principal place of business at 10432 Balls Ford Road, Suite 300, Manassas, VA 20109.

5.      Defendant Mr. Chapke is an individual residing at A 801 NeelSidhi Splendour, Sector 15, CBD Belapur, Navi Mumbai 400614, India.

6.      Defendant DNC is an Indian registered private company with a registered office at A 801 NeelSidhi Splendour, Sector 15, CBD Belapur, Navi Mumbai 400614, India.

## JURISDICTION AND VENUE

7.      This is a civil action seeking damages and injunctive relief for copyright infringement under the Copyright Act, 17 U.S.C. § 101, *et seq.*

8.      This Court has jurisdiction pursuant to the following statutes:

(a)      28 U.S.C. § 1331, which gives district courts original jurisdiction over civil actions arising under the Constitution, laws or treaties of the United States;

(b)      28 U.S.C. § 1367, which gives district courts supplemental jurisdiction over certain state law claims; and further,

(c)      If and to the extent that Section 1367 may be found not to apply to any state claim at issue here, this Court would have jurisdiction

under federal diversity jurisdiction, 28 U.S.C. § 1332, as the parties are diverse in citizenship and the amount in controversy exceeds $75,000.

9.     This Court has personal jurisdiction over Defendants in this action under

Va. Code Ann. §§ 8.01-328.1 subsections A(1), (2), (3) and (4), and subsection B, because:

    (a)     Defendant Mr. Chapke transacted business with Plaintiff, a Virginia corporation, and contracted to supply his services as a board member of Plaintiff corporation, in this Commonwealth;

    (b)     Defendant DNC transacted business with Plaintiff, a Virginia corporation, in this Commonwealth, and contracted to supply its intellectual property to Plaintiff in this Commonwealth;

    (c)     Defendant Mr. Chapke caused tortious injury by an act in this Commonwealth, namely using Plaintiff's computer or computer network located in this Commonwealth;

    (d)     Defendants Mr. Chapke and DNC caused tortious injury to Plaintiff, a Virginia corporation, by acts and omissions outside this Commonwealth, and both Defendants regularly do business with Plaintiff in this Commonwealth.

10.     Jurisdiction is also proper as to Defendant Mr. Chapke because he breached duties that he owed to Plaintiff corporation as a member of its Board of Directors, and Plaintiff's Bylaws, a true and correct copy of which is attached hereto as Exhibit B, provide that "the circuit courts or a federal district court in the Commonwealth of Virginia shall be the sole and exclusive forum for… any action for breach of duty… by any current or former officer or director of" Plaintiff. (Ex. B at ¶ 9.4).

11.     Jurisdiction is also proper as to Defendant DNC because the Agreement upon which Plaintiff brings suit contains a Consent to Jurisdiction clause under which "each party consents to the jurisdiction and venue of" the "federal or state courts located in or with jurisdiction over Prince William County, Virginia."  (Ex. A at ¶ 3.2).

12.     Jurisdiction is also proper as to Defendant Mr. Chapke because at all times relevant here, Defendant DNC, which consented by contract to the jurisdiction of the Virginia

state and federal courts as set forth *supra*, was the alter ego corporation of individual Defendant Mr. Chapke.

13.     Venue is proper in the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 1391 because Defendants conduct business in this District, are subject to personal jurisdiction in this District, and reside in this District within the meaning of 28 U.S.C. § 1391(c).

## BACKGROUND

### The Parties' Business Relationship and the Agreement

14.     Plaintiff Ez-XBRL Solutions, a Virginia company founded in 2009 as an LLC and converted in 2011 into a corporation, is a global provider of products and services for financial regulatory compliance and financial analytics. Ez-XBRL Solutions is headquartered in Virginia and also has operations in the UK and India.

15.     Defendant Mr. Chapke founded co-defendant DNC Data Systems Ltd. in his native India.  Mr. Chapke later co-founded Plaintiff Ez-XBRL Solutions.

16.     On February 9, 2011, Mr. Chapke, in his capacity as an officer of DNC Data Systems, signed the Assignment of Rights Agreement ("Agreement") under which DNC Data Systems assigned to Ez-XBRL "[a]ll right, title, interest and benefit… in and to all United States and foreign patents and patent applications… trade secrets, trademarks, service marks… copyrights, technology licenses, know-how, confidential information, shop rights, and all other intellectual property rights owned or claimed by [DNC] embodied in" certain "Assets," as well as "all technical data… engineering files, system documentation… and design specifications acquired or developed" by DNC "in connection with the development" of the same. (Ex. A at ¶¶ 1.1.1 & 1.1.2).

17.     The Agreement defined "Assets" as "the computer application, known as Ez-XBRL, and all documentation associated therewith and all associated intellectual property rights…." (Ex. A at Recitals).

18.     Plaintiff's flagship product, the computer application known as Ez-XBRL, enables users to create reports and other financial documents using what is known as "eXtensible Business Reporting Language," the global standard for exchanging business and financial data.

19.     Under the Agreement, DNC further provided that it would "not… compete with [Plaintiff's] business as relates to the Assets," including specifically a prohibition on "giving, developing, marketing, licensing, selling, or offering to sell any product or services that are competitive with the Assets, or that are competitive with services that [Plaintiff] provides relating to the Assets (e.g., support, development and consulting), directly or indirectly, whether this competition is carried out via [DNC] or via a subsidiary or parent company or any other company that [DNC] has a controlling interest in, and that [DNC] will not assist any third party, whether an individual or entity, to compete with" Plaintiff. (Ex. A at ¶ 1.6). DNC also "irrevocably consent[ed] to the grant of injunctive relief to [Plaintiff] to enforce" these noncompetition provisions.  (*Id.*).

20.     Defendant Mr. Chapke became a director of Plaintiff corporation in May 2011, when Plaintiff company converted from an LLC to a C-corporation, and he has continued to serve as a director to and through the present day.

21.     Defendant Mr. Chapke, as the only one of the co-founders of Plaintiff Ez-XBRL Solutions who maintains a permanent residence in India, was also charged with managing Plaintiff's Indian subsidiary, Ez-XBRL Solutions Pvt. Ltd., on Plaintiff's behalf.

22.     On multiple occasions Mr. Chapke has physically visited Virginia for business strategy meetings, negotiations and prospective client meetings on behalf of Plaintiff.

23.     While serving as a director of Plaintiff Ez-XBRL Solutions and as Plaintiff's agent responsible for managing Plaintiff's Indian subsidiary, Defendant Mr. Chapke also continued to serve as an officer of Defendant DNC.

24.     At all relevant times Defendant DNC was the corporate alter ego of individual Defendant Mr. Chapke. Specifically, on information and belief:

> (a)     Defendants DNC and Mr. Chapke were united by interest and ownership, in that Defendant Mr. Chapke owned substantially all of Defendant DNC's stock, whether directly or through relatives or associates who held stock for Mr. Chapke's use and benefit; Defendant Mr. Chapke controlled and directed the corporate acts of Defendant DNC; and Mr. Chapke caused Defendant DNC to act for his own benefit; and

> (b)     Defendant Mr. Chapke used the corporate form of Defendant DNC to perpetrate a fraud or misdeed, to commit an injustice and to gain an unfair advantage by, *inter alia*, infringing Plaintiff's copyrights, obtaining U.S.-based computer networks and equipment on which some infringements were committed, breaching his fiduciary duties to Plaintiff, and committing other improper acts as set forth below.

### Plaintiff's Registered Copyrights

25.     Plaintiff holds registered copyrights in certain software products (the "Infringed Software"), as set forth in Exhibit C hereto.

26.     Plaintiff has filed applications for copyright registration with respect to certain other software products, as set forth in Exhibit C hereto, and is awaiting issuance of the registrations.

27.     As stated in greater detail in Exhibit C hereto, Plaintiff's registered copyrights pertinent to this action fall into three categories: (i) Ez-XBRL itself, which is the subject of the Agreement; (ii) software products that constitute derivative works of Ez-XBRL under section 106(2) of the Copyright Act; and (iii) other software products.

28.     Plaintiff owns the copyright and other intellectual property rights in the first category, the Ez-XBRL software itself, by virtue of the Agreement. To the extent that Plaintiff has further developed or updated the Ez-XBRL software subsequent to the 2011 execution of the Agreement, Plaintiff also owns all rights therein as the author thereof by virtue of the work-for-hire provisions of the Copyright Act. 17 U.S.C. § 101.

29.     As to the second category of software, Plaintiff owns all rights therein by virtue of both the exclusive right to prepare derivative works that Defendant DNC assigned to Plaintiff under the Agreement, and as the author thereof by virtue of the work-for-hire provisions of the Copyright Act. 17 U.S.C. § 101.

30.     As to the third category of software, Plaintiff owns all rights therein as the author thereof by virtue of the work-for-hire provisions of the Copyright Act. 17 U.S.C. § 101.

## COUNT ONE

### (Direct and Secondary Copyright Infringement)

### (17 U.S.C. § 501)

31.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 30 above as if fully set forth herein.

32.     Neither Defendant has any license, authorization, permission or consent to copy, distribute, prepare derivative works based upon, or otherwise use Plaintiff's copyrighted software code.

33.     On information and belief, beginning at least as early as 2015, Defendant Mr. Chapke, without the knowledge or permission of Plaintiff, copied Plaintiff's proprietary software code and transferred the copies to servers or other computer equipment that he controlled, in violation of section 106(1) of the Copyright Act. 17 U.S.C. § 106(1).

34.     On information and belief, Defendant Mr. Chapke also created derivative works and/or directed others to create derivative works based upon Plaintiff's copyrighted software without the knowledge or permission of Plaintiff, in violation of section 106(2) of the Copyright Act. 17 U.S.C. § 106(2).

35.     On information and belief, Defendant Mr. Chapke also directed employees of Plaintiff's Indian subsidiary to copy Plaintiff's proprietary software code onto computer servers controlled by Mr. Chapke, in violation of Section 106(1) of the Copyright Act. 17 U.S.C. § 106(1).

36.     On information and belief, Defendant Mr. Chapke also sold unauthorized copies of Plaintiff's copyrighted software to one or more third-party customers, in violation of Section 106(3) of the Copyright Act. 17 U.S.C. § 106(3).

37.     On information and belief, Defendant DNC, without the knowledge or permission of Plaintiff, infringed Plaintiff's copyrighted software through at least the following actions taken by DNC officer and owner Mr. Chapke, who was acting within the scope of his employment with DNC: (i) Mr. Chapke used DNC servers and other computer equipment to make unauthorized copies of Plaintiff's software; and (ii) Mr. Chapke used DNC servers and other computer equipment to prepare unauthorized derivative works based upon Plaintiff's software, in violation of sections 106(1)-(2) of the Copyright Act, 17 U.S.C. §§ 106(1)-(2).

38.     Defendant Mr. Chapke induced, caused and contributed to the acts of direct infringement by Defendant DNC.

39.     Defendants' acts of infringement are willful, intentional, purposeful, in bad faith, in disregard of and with indifference to Plaintiff's rights.

40.     As a direct and proximate result of said infringement by Defendants, Plaintiff is entitled to actual damages in an amount to be proven at trial.

41.     Plaintiff is also entitled to Defendants' profits attributable to the infringement, pursuant to 17 U.S.C. § 504(b), including an accounting of and a constructive trust with respect to such profits.

42.     In the alternative, Plaintiff is entitled to statutory damages.

43.     Plaintiff is further entitled to its attorneys' fees and costs pursuant to 17 U.S.C. § 505 and otherwise according to law.

44.     As a direct and proximate result of the foregoing acts and conduct, Plaintiff has sustained and will continue to sustain substantial, immediate and irreparable injury for which there is no adequate remedy at law. On information and belief, Plaintiff avers that unless enjoined and restrained by this Court, Defendants will continue to infringe Plaintiff's rights in the Infringed Software. Plaintiffs are entitled to preliminary and permanent injunctive relief to restrain and enjoin Defendants' continuing infringing conduct.

## COUNT TWO

### (Breach of Fiduciary Duty)

### (VA CODE ANN. § 13.1-690)

45.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 44 above as if fully set forth herein.

46.     Defendant Mr. Chapke, as a director of Plaintiff corporation, had a fiduciary duty to act in good faith in the best interest of Plaintiff corporation.  *See, e.g.*, VA CODE ANN. § 13.1-690.

47.     Defendant Mr. Chapke also owed Plaintiff a fiduciary duty by virtue of his role as agent of Plaintiff corporation, in which capacity he was responsible for overseeing and managing Plaintiff's Indian subsidiary, Ez-XBRL Solutions Pvt. Ltd.

48.     Despite his fiduciary duties, on information and belief, in December 2016 Defendant Mr. Chapke formed a company, Organiza Tech Pvt. Ltd., in his native India, and began using that company to compete with Plaintiff. Specifically, Mr. Chapke, through his company Organiza Tech Pvt. Ltd., reached out to customers and potential customers of Plaintiff, offering to sell them unauthorized, infringing copies of Plaintiff's proprietary software and to sell them services that compete with the services that Plaintiff offers relating to its proprietary software.

49.     For example, on information and belief, after acting on Plaintiff's behalf as the main point of contact to negotiate a contract between Plaintiff and a customer, R.R. Donnelley & Sons Co. and its Indian subsidiary, R.R. Donnelley India Outsource Pvt. Ltd. (hereinafter collectively, "RRD"), Defendant Mr. Chapke persuaded RRD to contract with his new company, Organiza Tech Pvt. Ltd., instead of with Plaintiff.

50.     As a further violation of his fiduciary duties as a director and agent of Plaintiff, Defendant Mr. Chapke has, on information and belief, executed written instruments changing the terms of the employment contracts between Plaintiff's Indian subsidiary and its employees, removing the requirement that said employees provide three months' notice prior to resignation, in order to enable his companies, Defendant DNC and/or Organiza, to more easily lure these employees away.

51.     As a further violation of his fiduciary duties as a director and agent of Plaintiff, Defendant Mr. Chapke has, on information and belief, instructed employees of

Plaintiff's Indian subsidiary to infringe Plaintiff's copyrights by copying Plaintiff's proprietary software without permission onto servers controlled by Mr. Chapke and/or one or more of his companies, Organiza Tech Pvt. Ltd. and/or Defendant DNC.

52.     As a further violation of his fiduciary duties as a director and agent of Plaintiff, Defendant Mr. Chapke has, on information and belief, instructed employees of Plaintiff's Indian subsidiary to act adversely to the interests of Plaintiff by deleting the most up-to-date versions of Plaintiff's software from servers controlled by Plaintiff and/or its Indian subsidiary.

53.     As a further violation of his fiduciary duties as a director and agent of Plaintiff, Defendant Mr. Chapke has, on information and belief, instructed employees of Plaintiff's Indian subsidiary to access Plaintiff's computer networks located in Virginia and elsewhere in the U.S. for the purpose of improperly acquiring, using and/or copying information located on such networks to further Defendant Mr. Chapke's personal financial interests, and for the purpose of deleting information located on such networks to the detriment of Plaintiff.

54.     As a further violation of his fiduciary duties as a director and agent of Plaintiff, Defendant Mr. Chapke has, on information and belief, instructed employees of Plaintiff's Indian subsidiary to perform their work more slowly and less skillfully, in order to hinder Plaintiff's efforts to acquire and satisfy customers.

55.     As a further violation of his fiduciary duties as a director and agent of Plaintiff, Defendant Mr. Chapke has, on information and belief, induced his company DNC to infringe Plaintiff's copyrights and to breach the Agreement with Plaintiff.

56.     Defendant Mr. Chapke's acts were willful, wanton, in bad faith and malicious, being performed for his own pecuniary benefit and to the detriment of Plaintiff.

57.     As a result of the actions of Defendant Mr. Chapke, Plaintiff has suffered general and special damages including lost profits, lost business opportunities, and response costs incurred, including attorneys' fees.

## COUNT THREE

### (Breach of Contract by Defendant DNC)

58.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 57 above as if fully set forth herein.

59.     On February 9, 2011, Defendant DNC entered into the Agreement with Plaintiff.

60.     Under the Agreement, DNC, *inter alia*, assigned certain intellectual property rights (the "Assets") to Plaintiff. (Ex. A at ¶ 1.1).

61.     The Assets included the then-existing version of Plaintiff's Infringed Software program Ez-XBRL, and any derivative works thereof. Ex. A at Recitals (stating DNC's "desire[] to assign… all… right, title, and interest in the computer program application, known as Ez-XBRL"); *id*. at ¶ 1.1 (providing that DNC was assigning the Assets as "in existence as of the Effective Date or later developed"); 17 U.S.C. § 106(2) (copyright holder has exclusive right to prepare derivative works).

62.     Under the Agreement DNC also agreed not to compete with Plaintiff's business as related to the Assets, and agreed not to assist any third party in competing with Plaintiff's business as related to the Assets. (Ex. A at ¶ 1.6).

63.     As evidenced by, *inter alia*, the non-competition provisions of the Agreement, at the time of execution the parties contemplated that Plaintiff would benefit from being the sole and exclusive source of the Assets and services related to them. Thus, Defendant DNC was aware at the time of contracting that if it breached the Agreement in such a way as to

undermine or destroy Plaintiff's status as the sole and exclusive source, such as by competing or assisting others in competing with Plaintiff, then Plaintiff would suffer the loss of those anticipated benefits.

64.     On information and belief, in or about 2015, Defendant DNC began to make unauthorized copies of the Assets, including certain Infringed Software, and to store said copies on its own computer servers.

65.     On information and belief, Defendant DNC then began to compete with Plaintiff as relates to the Assets.

66.     On information and belief, Defendant DNC also assisted a third-party business entity, Organiza Tech Pvt. Ltd., an Indian company formed in or about November 2016 by Defendant Mr. Chapke, in competing with Plaintiff's business as relates to the Assets.

67.     On information and belief, the actions of Defendant DNC caused at least one potential customer of Plaintiff, with whom DNC's Director Mr. Chapke was negotiating ostensibly on Plaintiff's behalf, to enter into a contract with Mr. Chapke's other company, Organiza Tech Pvt. Ltd., instead of with Plaintiff.

68.     Defendant DNC's actions were willful, wanton, in bad faith and malicious.

69.     Defendant DNC's actions have deprived Plaintiff of its contractual expectations and have further caused Plaintiff special damages including lost profits, lost business opportunities, and response costs incurred, such as attorneys' fees.

## COUNT FOUR

### (Tortious Interference with Existing Contract)

70.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 69 above as if fully set forth herein.

71.     In 2011 Defendant DNC executed the Agreement, under which DNC agreed, *inter alia*, to irrevocably assign certain intellectual property rights to Plaintiff and not to compete with Plaintiff for a period of time that has not yet expired.

72.     Defendant Mr. Chapke, as the Director of DNC and signatory on DNC's behalf of the Agreement, knew that the Agreement existed and what its provisions were.

73.     Defendant Mr. Chapke intentionally interfered with DNC's performance of its obligations under Paragraphs 1.1 and 1.6 of the Agreement, inducing Defendant DNC to breach the Agreement in at least the following ways: (i) illegally copying and making derivative works based upon the "Assets" (intellectual property) that DNC had assigned to Plaintiff under the Agreement; (ii) competing with Plaintiff's business as related to the Assets; and (iii) assisting third-party business entity Organiza Tech Pvt. Ltd. in competing with Plaintiff's business as related to the Assets.

74.     Defendant Mr. Chapke's actions were willful, wanton, in bad faith and malicious.

75.     Plaintiff has suffered both money damages and irreparable harm for which Plaintiff cannot be adequately compensated with money damages, as a result of Defendant Mr. Chapke's intentional interference with the contract between Plaintiff and Defendant DNC.

## COUNT FIVE

### (Tortious Interference with Prospective Contract)

76.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 75 above as if fully set forth herein.

77.     In 2016, while a member of Plaintiff's board of directors and while acting as Managing Director of Plaintiff's Indian subsidiary, Defendant Mr. Chapke acted on Plaintiff's behalf as the main point of contact to negotiate a contract between Plaintiff and a U.S. customer,

R.R. Donnelley & Sons Co., and its Indian subsidiary, R.R. Donnelley India Outsource Pvt. Ltd. (hereinafter collectively, "RRD").

78.     During negotiations with RRD, ostensibly acting on Plaintiff's behalf, Defendant Mr. Chapke caused software coders and other employees of Plaintiff's Indian subsidiary to perform substantial work creating software code suitable to RRD's needs.

79.     Plaintiff, through its Indian subsidiary, owns all rights in the said software code created for RRD.

80.     On information and belief, in December 2016, Defendant Mr. Chapke formed an Indian company, Organiza Tech Pvt. Ltd., for the purpose of acquiring the commercial relationship with RRD that he had been tasked with acquiring on behalf of Plaintiff.

81.     On information and belief, in or about February 2017, Defendant Mr. Chapke persuaded RRD to enter into a contract with Organiza Tech under which Organiza Tech purported to license to RRD the software developed and owned by Plaintiff and Plaintiff's Indian subsidiary.

82.     Neither Defendant Mr. Chapke nor Organiza Tech had or has any right to license the said software to any party.

83.     Defendant Mr. Chapke's actions with respect to the RRD contract were a breach of his fiduciary duty toward Plaintiff and were willful, wanton, in bad faith and malicious, being performed for his own pecuniary benefit and to the detriment of Plaintiff.

84.     As a result of the actions of Defendant Mr. Chapke, Plaintiff has suffered the pecuniary loss of the benefits of the RRD contract, as well as harm to its business reputation and goodwill.

## COUNT SIX

### (Conversion)

85.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1 through 84 above as if fully set forth herein.

86.     Plaintiff charged Defendant Mr. Chapke with the responsibility for overseeing a team of software engineers, employed by Plaintiff's Indian subsidiary, to develop software on Plaintiff's behalf.

87.     Plaintiff's proprietary software was embodied in software code that the team of engineers wrote, developed, copied, tested, and demonstrated, at least in part, on computer servers located in the United States.

88.     Defendant Mr. Chapke and Plaintiff communicated regarding the development status of Plaintiff's proprietary software using email accounts that are controlled by Plaintiff and that reside on computer servers located in the United States.

89.     Plaintiff intended to distribute and sell this proprietary software to customers in the United States. Plaintiff already had contracts with some U.S. customers, and Plaintiff, through its agent Defendant Mr. Chapke, was in negotiations with at least one more U.S. customer.

90.     Plaintiff owns all intellectual property rights in said software code, as well as in all derivative works thereof.

91.     Plaintiff owns all copies of such software code and any derivative works, until and unless Plaintiff licenses a given copy to another party.

92.     Plaintiff never licensed any copies of its software code to Defendants Mr. Chapke or DNC.

- 16 -

93.     Plaintiff never granted Defendants Mr. Chapke or DNC any rights in any of its software code or in any works derivative thereof.

94.     Defendant Mr. Chapke wrongfully exercised dominion and control over the software code developed by the team of software engineers by personally transferring, and/or causing team members to transfer, copies of such code to servers and/or other computer equipment controlled by him, including computer equipment owned and/or controlled by his company, Defendant DNC.

95.     Defendant Mr. Chapke further wrongfully exercised dominion and control over the software code by retaining copies of such code on servers and/or other computer equipment controlled by him, including computer equipment owned and/or controlled by his company, Defendant DNC.

96.     Defendant Mr. Chapke deprived Plaintiff of possession of this property by deleting and/or causing the deletion of copies of this property from Plaintiff's servers.

97.     Defendant Mr. Chapke also deprived Plaintiff of possession of this property by directing or allowing the team of software engineers, which Plaintiff had asked him to manage on Plaintiff's behalf, to keep laptops that had been provided to them by Plaintiff's Indian subsidiary when they resigned and took positions with Defendant Mr. Chapke's competing company, Organiza Tech. In so doing, Defendant Mr. Chapke left Plaintiff without any copies or other complete embodiments of Plaintiff's proprietary software.

98.     Defendant Mr. Chapke committed these wrongful acts in his capacity as Director and/or owner of his company, Defendant DNC.

99.     All such actions on the part of Defendant Mr. Chapke were wrongful both under the Copyright Act and under his fiduciary duties as a director and agent of Plaintiff.

100.     All such actions on the part of Defendant DNC were wrongful both under

the Copyright Act and under DNC's contractual obligation not to compete with Plaintiff or to

assist any third party, such as Defendant Mr. Chapke, in competing.

101.     Defendants' conversion of this property has caused Plaintiff substantial

damages by rendering Plaintiff unable to meet the needs of existing customers for updated

versions of and enhancements to its software, as well as unable to effectively solicit new

customers.

## COUNT SEVEN

### (Unjust Enrichment)

102.     Plaintiff repeats and re-alleges the allegations set forth in paragraphs 1

through 101 above as if fully set forth herein.

103.     Plaintiff conferred, involuntarily due to Defendants' acts, at least the

following benefits upon Defendants:

> (a)     Valuable software code that Defendants could and did use
> to solicit and obtain business advantages;

> (b)     At least two customers, the RRD parent and subsidiary,
> with whom Defendant Mr. Chapke negotiated ostensibly on Plaintiff's
> behalf, but which he, with the assistance of Defendant DNC, ultimately
> persuaded to enter into a contract with another company of his instead of
> with Plaintiff;

> (c)     Highly trained employees, including computer
> programmers experienced in updating and creating additional
> functionalities of Plaintiff's proprietary software, whom Defendant Mr.
> Chapke improperly induced to resign from Plaintiff's Indian subsidiary in
> order to take up employment with his competing company, and who had
> signed contracts with Plaintiff's Indian subsidiary requiring either three
> months' notice prior to resignation or three months' salary in lieu of
> notice.

104.     Defendants were aware of the above benefits.

105.    Defendants should reasonably have expected to pay Plaintiff for the above benefits, by way of at least the following: (i) licensing fees for the software code; (ii) a fee to be mutually negotiated in order to release DNC from its contractual obligation not to assist any person in competing with Plaintiff; (iii) compensation for diverting a customer who was in negotiations with Plaintiff; (iv) compensation, including at least the three months of salary for each resigning employee that was provided for under their employment contracts until Defendant Mr. Chapke, without the authorization or knowledge of Plaintiff, changed the terms of their employment contracts.

106.    Defendants have paid Plaintiff nothing for these benefits.

107.    Defendant DNC's actions were willful, wanton, in bad faith and malicious.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Ez-XBRL Solutions respectfully requests that this Court award the following relief:

1.    Money damages in such amount as may be found, or as otherwise permitted by law.

2.    An accounting of, and the imposition of a constructive trust with respect to, Defendants' profits attributable to their infringements of Plaintiff's copyrights in the Infringed Software.

3.    An accounting of, and the imposition of a constructive trust with respect to, Defendants' profits attributable to their breach of contract, breach of fiduciary duties, and/or tortious interference.

4.      A preliminary and permanent injunction enjoining and restraining all Defendants and each of their parents, subsidiaries, affiliates, members, directors, officers, managers, associates, agents, representatives, servants, employees, contractors, successors and assigns, and all others acting in concert therewith or having knowledge thereof, from copying, selling, distributing, registering, or otherwise infringing the Infringed Software or any derivative work thereof;

5.      A preliminary and permanent injunction enjoining and restraining Defendant DNC and each of its parents, subsidiaries, affiliates, members, majority owners, directors, officers, managers, associates, agents, representatives, servants, employees, contractors, successors and assigns, including Defendant Mr. Chapke as a current or former director, officer, manager, agent, representative, majority owner, and alter ego of Defendant DNC, and all others acting in concert therewith or having knowledge thereof, from breaching or conspiring to breach any provision of the Agreement;

6.      A preliminary and permanent injunction enjoining and restraining Defendant Mr. Chapke, directly or indirectly through any business entity, organization, associates, agents, representatives, servants, employees, contractors, successors and assigns, and all others acting in concert therewith or having knowledge thereof, from soliciting any past or present customer, employee, or contractor of Plaintiff, or otherwise acting in violation of Mr. Chapke's duty of loyalty to Plaintiff;

7.      A preliminary and permanent injunction enjoining and restraining Defendant Mr. Chapke, directly or indirectly through any business entity, organization, associates, agents, representatives, servants, employees, contractors, successors and assigns, and

all others acting in concert therewith or having knowledge thereof, from interfering with Plaintiff's contracts, including but not limited to the Agreement;

8.      A preliminary and permanent injunction ordering all Defendants and each of their parents, subsidiaries, affiliates, members, directors, officers, managers, associates, agents, representatives, servants, employees, contractors, successors and assigns, and all others acting in concert therewith or having knowledge thereof, to turn over to Plaintiff all copies of any source code, test data, documentation and any other data, documents, code and information concerning the Infringed Software or any derivative work thereof;

9.      For prejudgment interest according to law;

10.      For Plaintiff's attorneys' fees, costs, and disbursements in this action; and

11.      All such other relief as this Court may deem just and proper.

Dated:  June 21, 2017              Respectfully submitted,

By: /s/ Janet Satterthwaite
VA I.D. No. 26759
Potomac Law Group, PLLC
1300 Pennsylvania Ave. NW
Washington, DC 20004
Phone: (202) 204 3005
Facsimile: (202) 318 7707
jsatterthwaite@potomaclaw.com

Counsel for Plaintiff Ez-XBRL Solutions, Inc.